717 P.2d 99
**STATE of New Mexico,
Plaintiff-Appellee,**

v.

**Garry PARSONS, Defendant-Appellant.**

**No. 8527.**

Court of Appeals of New Mexico.

March 18, 1986.

Paul Bardacke, Atty. Gen., Charles D. Noland, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Kathryn Hormby, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

DONNELLY, Judge.

This case concerns the revocation of probation. The principal issue on appeal is whether the trial court erred in revoking defendant's probation because of his failure to pay a fine and costs of probation. Defendant's second issue, regarding the failure of the trial court to properly credit him with all allowable time served on probation, has been conceded by the state. We remand for further proceedings.

Defendant pled guilty to possession of a controlled substance (marijuana), a misdemeanor, under NMSA 1978, Section 30–31–23 (Cum.Supp.1985). The court sentenced defendant to serve a term of 364 days incarceration, but suspended the sentence and placed him on probation. The trial court additionally imposed a fine of $500 and ordered defendant to pay probation costs in the amount of $15 per month. The probation order, agreed to by defendant,

provided that the fine would be paid in eleven monthly installments of $42 and a final payment of $38.

Defendant was married and furnished support to his wife and four children. Defendant's wife did not work outside the home. The principal asset owned by defendant was an automobile, valued at $500. Before sentencing, defendant's probation officer advised the court that defendant was employed and that his net salary was approximately $400 per month, with housing provided. The probation officer also reported that defendant stated that his expenses averaged about $400 per month and that his total outstanding medical bills amounted to $4,000.

Defendant's probation began June 22, 1984. Prior to October, he made one payment of $20 on the fine and a payment of $15 on his probation costs. On October 9, defendant made an additional payment of $10. The state filed a motion to revoke probation on October 12, 1984, based upon the grounds that defendant had failed to make any payments of the fine and that he was in arrears in paying probation costs. At the beginning of January, February and March, defendant made three additional payments of $10 each. A hearing on the motion to revoke probation was held on March 27, 1984.

At the probation revocation hearing, the state presented evidence indicating that: (1) defendant had made total payments of $65 for probation costs; (2) he was $168 in arrears in the payments of probation costs as of October 10, 1984; and (3) he had failed to make any payments toward the fine which had been imposed. Gloria Bodley, defendant's probation officer, also testified that she had warned defendant on several occasions that he had to pay both the fine and his costs of probation.

Defendant testified that he was financially unable to pay the fine and probation costs and that he had paid as much as he could afford. He testified that he earned $535 net per month, after his employer's deduction for car payments on a car which he had purchased from the company. Defendant also stated that he had lost his job a month and a half prior to the revocation hearing and that during this period, he had been looking for a job every day. Defendant detailed monthly expenses of $150 for food, over and above the food stamps received by the family, and stated that he had incurred a utility bill of $80 for propane. Additionally, defendant testified that he had medical and dental bills on which he usually paid $15 to $20 per month. Defendant related that he had no checking or savings accounts and that he also had expenses for his children's clothing.

At the conclusion of the hearing, the court ruled that it was ordering that defendant's probation be revoked and observed that: "I probably should have sent him to jail in the first instance. I've given him a chance to pay the fine and fee. If he finds a job and otherwise qualifies he'll be granted work release."

The court granted defendant's request for an opportunity to submit findings of fact and conclusions of law. Defendant, however, did not file his requested findings until eight days after entry of the order revoking probation, even though the order revoking probation was not entered until a week after the hearing.

## I. REVOCATION OF PROBATION

Did the court properly revoke defendant's probation in light of defendant's testimony that he was financially unable to make additional payments? To resolve this issue we look to *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983).

In revocation proceedings for failure to pay a fine or restitution, the *Bearden* rule requires that, first, the trial court must determine whether defendant made bona fide efforts to pay; then, if bona fide efforts were made, the trial court must determine whether alternative forms of punishment, other than imprisonment, are adequate. The court in *Bearden* held:

We hold, therefore, that in revocation proceedings for failure to pay a fine or restitution, a sentencing court must inquire into the reasons for the failure to pay. *If the probationer willfully refused to pay or failed to make sufficient bona fide efforts legally to acquire the resources to pay, the court may revoke probation and sentence the defendant to imprisonment within the authorized range of its sentencing authority.* If the probationer could not pay despite sufficient bona fide efforts to acquire the resources to do so, the court must consider alternate measures of punishment other than imprisonment. *Only if alternate measures are not adequate to meet the state's interests in punishment and deterrence may the court imprison a probationer who has made sufficient bona fide efforts to pay.*

*Id.* at 672, 103 S.Ct. at 2072 (emphasis added).

The rationale relied on in *Bearden* was that incarceration after revocation of a defendant's probation, for failure to pay a fine or restitution, violates the Due Process Clause of the Fourteenth Amendment, where defendant has made a bona fide effort to pay the amounts ordered, but, through no fault of his own, lack of funds prevents his payment.

The decision in *Bearden* was followed two years later by *Black v. Romano,* 471 U.S. 606, 105 S.Ct. 2254, 85 L.Ed.2d 636 (1985). In *Black,* the court observed that due process imposes procedural and substantive limits on the revocation of a defendant's conditional liberty interest created by probation. *Black* further held that although *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), outline the minimum procedural safeguards required by due process, neither decision imposes on a sentencing court the duty of explicitly stating why it has rejected alternatives to incarceration. *See also Stuard v. State,* 681 P.2d 1120 (Okla.Ct.App.1984).

*Black* articulated that the procedures "already afforded by *Gagnon* and *Morrissey* protect the defendant against revocation of probation in a constitutionally unfair manner." *Black,* 105 S.Ct. at 2259. Those procedures include a written statement by the factfinder indicating the evidence relied on and the reasons for revoking probation; the required written statement "helps to insure accurate factfinding with respect to any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds supported by the evidence." *Id.* at 2259.

In the instant case, the trial court did not make an express finding that defendant's failure to pay the fine and costs of probation was willful. Defendant argues on appeal that the trial court was required to adopt explicit findings as to defendant's ability to pay the fine and costs and as to his willful failure to pay them. Defendant also contends that the trial court must adopt findings on the issue of whether suitable alternatives to incarceration exist. Defendant further submits that absent such findings, due process requirements recognized in *Bearden* are not satisfied. The state responds that although explicit findings on these factual issues were not adopted, the court's findings on these matters are implicit. We agree only with that portion of the state's argument which contends that the trial court was not required to adopt findings as to the alternatives to incarceration which it considered and rejected. The court in *Black* noted that requiring the factfinder to elaborate the reasons "for a course not taken would unduly burden the revocation proceeding without significantly advancing the interests of the probationer." *Id.* at 2259. *See also State v. Follis,* 81 N.M. 690, 472 P.2d 655 (Ct. App.1970) (sentencing judge is not required to state on the record reasons for declining to place defendant upon probation).

■ Was the trial court required to adopt findings of fact or indicate in the record its determination of whether defendant had the ability to pay the sums ordered

and whether defendant's failure to pay was willful? We answer the question in the affirmative. Neither *Bearden* nor *Black* precisely address this issue. *Black*, however, finds that in a revocation hearing, procedural due process is satisfied where probationer has an opportunity to present mitigating evidence and to argue alternatives to imprisonment and, additionally, the factfinder states the reason for its decision and the evidence relied on.

We conclude that findings of fact and conclusions of law are necessary in order to permit meaningful appellate review in probation revocation proceedings in which revocation is grounded on defendant's alleged failure to pay a fine, costs, or restitution. *See State v. Duke*, 10 Kan.App.2d 392, 699 P.2d 576 (1985). *Compare* NMSA 1978, Crim.P.R. 38(d) (Repl.Pamp.1985). An implicit finding of fact is insufficient where a specific finding is required or when the court's findings fail to resolve, in any meaningful way, the basic issues in dispute. *See, e.g., State v. Doe*, 93 N.M. 481, 601 P.2d 451 (Ct.App.1979); *Michelson v. Michelson*, 89 N.M. 282, 551 P.2d 638 (1976).

Defendant failed to file requested findings of fact until after the court entered its judgment revoking probation. The lack of any finding in the record precludes review of the evidence in the case. *See Martinez v. Martinez*, 101 N.M. 493, 684 P.2d 1158 (Ct.App.1984). Thus, we must remand to the district court for entry of additional findings and issuance of a decision in compliance with the requirements of *Bearden*.

■ The court in *Black* stated that "*Bearden v. Georgia* recognized substantive limits on the automatic revocation of probation where an indigent defendant is unable to pay a fine or restitution." *Black*, 471 U.S. at 611, 105 S.Ct. at 2257–58, 85 L.Ed.2d at 642. Those substantive limits require that: (1) there must be an inquiry into the reasons for the failure to pay; (2) if the reasons for defendant's failure to pay are either not willful or indicate an inability to pay, the court must consider alternatives to incarceration; and (3) only if

alternative measures do not meet the state's interests, then the court may order confinement. *Bearden*.

■ The state bears the burden of proving the fact of a probation violation with reasonable certainty. *See State v. Brusenhan*, 78 N.M. 764, 438 P.2d 174 (Ct.App.1968); *State v. Martinez*, 84 N.M. 295, 502 P.2d 320 (Ct.App.1972). Proof of a violation of a condition of defendant's probation need not be established beyond a reasonable doubt. *Id.; State v. Baca*, 80 N.M. 527, 458 P.2d 602 (Ct.App.1969). A defendant's probation may be revoked if, after a hearing, it is established that he has failed to comply with a condition of his probation. *See Id.*

NMSA 1978, Section 31–12–3(C)(1) (Repl. Pamp.1984), provides in part:

> When a defendant sentenced to pay a fine in installments defaults in the payment thereof the court, upon motion of the attorney charged with the prosecution of the case, or upon its own motion, may require defendant to show cause why his default should not be treated as contumacious and may issue a summons or a warrant of arrest for his appearance. *Unless the defendant shows that his default was not attributable to a willful refusal to obey the order of the court, or to a failure on his part to make a good faith effort to obtain the funds required for payment,* the court shall find that his default was contumacious and may order him committed until a fine or a specified part thereof is paid. [Emphasis added.]

■ The above statute must be read together with the ruling of the Court in *Bearden*. In *Bearden*, the Court held that incarceration of a probationer who, through no fault of his own, is unable to pay a fine or make restitution, violates the constitutional guarantee of equal protection. *Bearden*. *See also* Annot., 31 A.L. R.3d 926 (1970). We apply the *Bearden* requirements to the instant case. The state presented evidence that defendant

failed to timely pay both the installments due on his fine and costs of probation. Defendant testified concerning his limited income, his obligation to support his family, his loss of employment and his efforts to find another job.

Here, we are unable to ascertain on review if the trial court made a determination as to whether the defendant's failure to pay arose from a wrongful refusal or was based on a bona fide financial inability to pay. In *Bearden,* the Court stated that "if the State determines a fine or restitution to be the appropriate and adequate penalty for the crime, it may not thereafter imprison a person solely because he lacked the resources to pay it." *Id.* 461 U.S. at 667, 103 S.Ct. at 2070. The Court ordered that the case be remanded for determination by the lower courts as to whether the defendant had made sufficient bona fide efforts to pay his fine, and, if so, to determine whether some alternate punishment was adequate to meet the state's interest in punishment and deterrence.[1] Thus, the *Bearden* rule requires the trial court to determine whether defendant made bona fide efforts to pay the sums ordered and if the court finds bona fide efforts were made, whether alternative forms of punishment, other than imprisonment, are adequate.

In *State v. Duke,* the court considered a case similar to the one before us. There, defendant at sentencing was placed on probation in October 1983, for a period of three years. As a condition of probation, defendant was ordered to pay court costs within ninety days, to pay a fine of $3,000 and to also make restitution of $520, pursuant to a payment schedule. Defendant lost his job in December. Although defendant paid the court costs within the ninety-day period, he only paid a total of $48.43 toward his obligation for payment of the restitution and fines imposed. The trial court revoked his probation on March 23, 1984, for failure to pay the fines and restitution.

The court in *Duke* held:

> The clear message in *Bearden* is that when determining whether to revoke probation, the trial court must consider why a probationer failed to pay a fine or court costs or make restitution as required by the conditions of probation.

> \*     \*     \*     \*     \*     \*

> [I]t appears that the sentencing court did not undertake any of the considerations required by *Bearden.* Rather, it appears the trial court automatically revoked probation once the probation violation was established. This automatic revocation, resulting in imprisonment without considering the reasons for the violation, is the precise action proscribed in *Bearden.* As we view *Bearden,* once the state establishes a violation of probation the probationer must raise the defense of poverty and introduce evidence showing poverty and a good-faith effort to meet the terms of probation.

*Id.* 699 P.2d at 578–579.

The rationale of the court in *Duke* is applicable to the instant case. In a probation revocation proceeding, if a defendant fails to present evidence of his inability to pay a fine or costs, evidence establishing his non-compliance is sufficient to justify a finding that his failure was willful or without lawful excuse. *See* § 31–12–3(C). Once the state offers proof of a breach of a material condition of probation, the defendant must come forward with evidence to excuse non-compliance by showing indigency and that the failure to pay was not willful. *See People v. Thomas,* 194 Cal. Rptr. 252, 146 Cal.App.3d 542 (1983); *State v. Bryant,* 73 N.C.App. 647, 326 S.E.2d 910 (1985). *Cf. Medlock v. State,* 688 S.W.2d 664 (Tex.App.1985).

In *State v. Sanchez,* 94 N.M. 521, 612 P.2d 1332 (Ct.App.), *cert. denied,* 94 N.M. 675, 615 P.2d 992 (1980), this court

---

1. *Bearden* lists examples of alternatives to incarceration, such as extension of the time for making payments, reduction of the fine, or ordering that the probationer perform some form of labor or public service. *Id.* 461 U.S. at 672, 103 S.Ct. at 2072.

observed that in *Morrissey v. Brewer,* the full panoply of rights owed a criminal defendant under the Due Process Clause does not apply in probation revocation proceedings, but that minimum due process requirements require *inter alia,* "a written statement of the factfinder of the evidence relied upon and the reasons for revocation." *Sanchez,* 94 N.M. at 523, 612 P.2d at 1334. The required findings of fact and conclusions of law permit meaningful appellate review and are vital where the trial court record does not clearly support the district court's ruling.

## II. CREDIT FOR TIME SERVED

Defendant contends on appeal that the trial court, in its order of revocation, failed to credit him for time served by him on probation. NMSA 1978, § 31–21–15(B) (Repl.Pamp.1981). The state does not contest this issue.

■ Since we have determined that the case must be remanded for adoption of further findings in accordance with this opinion, the trial court is directed to take action consistent herewith. Should the trial court determine that defendant's failure to pay the fine and costs of probation was willful or that alternative forms of punishment are inadequate to meet the state's interest in punishment and deterrence, and that probation should be revoked, defendant shall be given credit for all time previously spent on probation, as of the date of the motion to revoke probation.

If, upon remand, the court ascertains that defendant made bona fide efforts to pay the fine and costs imposed, but was unable to pay because of financial inability, then the court shall: (1) enter .findings thereon, (2) set aside the order revoking probation, and (3) consider other alternative forms of punishment. *See Bearden.*

**IT IS SO ORDERED.**

MINZNER and GARCIA, JJ., concur.